Roger B. TREADWELL, Plaintiff-Appellant,

v.

Clifford ALEXANDER, Secretary of the Army, and Colonel Tilwood C. Creel, District Engineer, Savannah District, Corps of Engineers, Defendants-Appellees.

No. 81–8019.

United States Court of Appeals, Eleventh Circuit.

June 16, 1983.

John P. Claeys, Jr., Foss & Boone, P.C., T.J. Foss, Augusta, Ga., for plaintiff-appellant.

Melissa S. Mundell, Asst. U.S. Atty., Savannah, Ga., Marc Richman, Atty., Russell L. Caplan, Dept. of Justice, Civ. Div., Washington, D.C., for defendants-appellees.

Before RONEY and HILL, Circuit Judges, and MORGAN, Senior Circuit Judge.

RONEY, Circuit Judge:

Roger Treadwell brought this action under the Rehabilitation Act of 1973, 29 U.S. C.A. §§ 791 and 794, alleging that the United States Army Corps of Engineers improperly denied him a position based on his physical handicap. The district court entered judgment for defendants. Plaintiff makes three assertions on appeal: *first,* the court erroneously excluded evidence regarding his ability to work which surfaced after the date on which the Office of Personnel Management authorized the Corps to pass over plaintiff for the job; *second,* the trial court failed to require the Corps to show that the physical criteria it relied on were job related; and *third,* the court erred in not requiring the Corps to show it could not make reasonable accommodations for plaintiff's handicap. We affirm.

Plaintiff is a retired Air Force colonel, rated by the Veteran's Administration as being 100 percent disabled. It based this rating primarily on two handicaps, a nervous condition and a heart condition. Because the pressures of military service precipitated his nervous condition, Treadwell was classified as a 10 point preference veteran with reinstatement eligibility for purposes of federal employment. This entitled him to preferred consideration with respect to any employment register upon which his name might appear. In February 1979 Treadwell had quadruple coronary bypass surgery and a pacemaker was implanted. Shortly thereafter he sought a job with the Corps of Engineers as a seasonal park technician at Clark's Hill Lake in South Carolina.

Without detailing all the evidence, we note that after numerous internal communications, medical examinations and reports, and discussions of the job's requirements, an Office of Personnel Management (OPM) medical officer approved the Corps' request to pass over Treadwell, citing his coronary bypass and use of a pacemaker. The Corps received the authorization May 21, and OPM notified Treadwell by a letter dated May 18, 1979.

■ The court granted defendants' motion *in limine*, which sought to prevent Treadwell from producing any evidence of events occurring after June 1, 1979, on the ground the evidence was irrelevant to determining whether the Corps improperly denied Treadwell employment because of his physical condition as known to it at that time. This ruling was correct. The issue the district court had to decide was whether the Corps, based on the information it had regarding Treadwell's physical condition at the time it made the final decision on April 27 to pass over Treadwell, discriminated against him in violation of the applicable statutes.

Treadwell brought suit under §§ 501 and 504 of the Rehabilitation Act of 1973. 29 U.S.C.A. §§ 791 and 794. Section 501 imposes on federal agencies a duty to take affirmative steps to ensure that handicapped individuals have equal access to employment opportunities in the federal government.[1] Section 504 prohibits discrimination against "otherwise qualified" handicapped individuals "solely" by reason of their handicap.[2] In 1978 Congress extended the proscriptions of § 504 to activities of the federal government and created a private right of action under § 501 in favor of persons subjected to handicap discrimination by employing agencies of the federal government.[3] 29 U.S.C.A. §§ 794, 794a(a)(1).

■ This case starts with the undisputed fact that the defendants refused to hire Treadwell because of his physical condition, on the ground that the physical condition would prevent him from doing the job. Once a plaintiff shows an employer denied him employment because of physical condition, the burden of persuasion shifts to the federal employer to show that the criteria used are job related and that plaintiff could not safely and efficiently perform the essentials of the job. *Prewitt v. United States Postal Service*, 662 F.2d 292, 310 (5th Cir., Unit A. 1981).[4] *See* 29 C.F.R. §§ 1613.702(f), .703, .705 (1982). The question on review is whether sufficient evidence supports the district court's decision that the Corps had an adequate basis for determining that Treadwell could not do the work.

1. Codified at 29 U.S.C.A. § 791(b), § 501(b) of the Act provides:

   Each department, agency, and instrumentality (including the United States Postal Service and the Postal Rate Commission) in the executive branch shall ... submit to the Civil Service Commission and to the [Interagency Committee on Handicapped Employees] an affirmative action program plan for the hiring, placement, and advancement of handicapped individuals in such department, agency, or instrumentality. Such plan shall include a description of the extent to which and methods whereby the special needs of handicapped employees are being met....

2. Codified at 29 U.S.C.A. § 794, § 504 as amended provides in pertinent part:

   No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service....

3. This private right of action was established by adding a new § 505(a)(1), 29 U.S.C.A. § 794a(a)(1), to the Rehabilitation Act providing:

   The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964, [42 U.S.C.A. § 2000e–16], including the application of sections 706(f) through 706(k) [42 U.S.C.A. § 2000e–5(f) through (k)], shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy.

4. As a decision of Unit A of the Fifth Circuit rendered after October 1, 1981, the decision is not binding precedent for the Eleventh Circuit. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982). As the first case in which a federal appellate court examined the nature and extent of this newly-created private right, we look to it for guidance.

Treadwell faults the district court's conclusion that he was unable to perform the essentials of the park technician's job.[5] He argues the court improperly excluded the evidence which established that he was physically capable. The evidence on that issue showed the following. Treadwell talked to Park Technician Supervisor Thomas Lewis about the job one day after being released from the hospital having undergone a quadruple bypass and pacemaker implant. He told Lewis he could not walk more than a mile a day, when the functional job requirements state that a technician must be capable of walking six hours a day and standing another one hour.[6] The one favorable evaluation the agency had before it on April 27 was rendered by Dr. Goodman, who had examined the plaintiff at the Augusta, Georgia Veterans Administration

5. The job description states the major duties of the seasonal park technician as follows:
    1. Compiles requested or specified statistics and information for development of interpretive themes. Through use of public contacts, talks, media releases, brochures, maps, displays, signing, and audio-visual programs, makes the public aware of the opportunities and resources available at the project. Interprets the scenic, natural, and cultural features at the project to enhance the understanding, appreciation and enjoyment of visitors. Encourages visitor participation in activities available at the lake. Stresses the idea that preservation of the resource depends on how it is used by the visitor.
    2. Collects fees in public recreation areas where a user fee is charged. This involves enforcement of the provisions of the user fee program and the rules and regulations governing use of the area by the public with more specific duties as follows:
        a. Issues and collects for user fee permits from individuals wishing to camp in designated areas and is accountable for permits sold and money received.
        b. Furnishes and explains to visitors the rules and regulations pertaining to the user fee program and to the use of the area by the public.
        c. Performs periodic checks to insure that the areas are adequately maintained and used in accordance with regulations. Acts of non-compliance and other problem areas are promptly reported to supervisor.
        d. Collects fee money from gate attendants and relieves attendants during time off.
    3. Periodically patrols the lands and waters of the project to assure public compliance with regulations. Assists in investigations of any unusual conditions and circumstances encountered within the lake area. Assists in the administration of the recreation program and law enforcement associated with it. Issues verbal and written warnings for violations of Title 36, Code of Federal Regulations. Responsible for proper operation, use, maintenance and servicing of equipment and observing and enforcing safety rules and regulations.
    Performs other duties as assigned.

6. These include:
    FUNCTIONAL REQUIREMENTS:
    . . . .
    2. Moderate lifting, 15–44 pounds
    . . . .
    5. Moderate carrying, 15–44 pounds
    . . . .
    10. Reaching above shoulder
    11. Use of fingers
    12. Both hands required
    13. Walking (6 hours)
    14. Standing (1 hour)
    . . . .
    20. Both legs required
    21. Operation of crane, truck, tractor, or motor vehicle
    22. Ability for rapid mental and muscular coordination simultaneously
    . . . .
    24. Near vision correctable at 13″ to 16″ to Jaeger 1 to 4
    25. Far vision correctable in one eye to 20/20 and to 20/40 in the other
    . . . .
    29. Depth perception
    30. Ability to distinguish basic colors
    . . . .
    32. Hearing (aid permitted)
    . . . .
    35. Other (specify)—Operation of patrol boat on intermittently [sic] basis.
    ENVIRONMENTAL FACTORS:
    1. Outside
    . . . .
    3. Excessive heat
    4. Excessive cold
    5. Excessive humidity
    6. Excessive dampness or chilling
    . . . .
    10. Dust
    . . . .
    17. Slippery or uneven walking surfaces
    . . . .
    19. Working around moving objects or vehicles
    . . . .
    27. Working alone
    28. Protracted or irregular hours of work
    29. Other (specify)—emotional and mental stability in dealing with general public.

Hospital. That evaluation, as Goodman testified, was based on the erroneous view that the job was sedentary. When Goodman in fact considered Treadwell's capabilities in light of the actual physical requirements of the job, *see* n. 6, he stated that he could not recommend that Treadwell be hired.[7]

Even though the district court granted the motion to exclude evidence after June 1, it apparently considered the evidence Treadwell argues supports his position. It found the opinions of the doctors who contacted the Corps after April 27 to be of uncertain value, however, because it appeared that none of them had ever examined Treadwell for this particular job or were even specifically aware of the nature of the position. Treadwell asserts that each of the exhibits refers to evidence of his medical condition as it existed prior to June 1, 1979, and properly takes the physical criteria into consideration. The letters themselves do not support this assertion. They cannot serve as a basis for overturning the district court's decision because they all relate to Treadwell's physical condition as it existed subsequent to the time the Corps passed him over. A finding of discrimination cannot be predicated on information the agency did not have before it at the time it made its decision.

■ Treadwell contends the district court did not require the Corps to show that the physical and environmental criteria were job related. Specifically, he asserts that neither the Corps nor the court enumerated precisely which duties he could not perform, failed to consider that the single activity consuming the vast majority of a park technician's time is fee collection, and overlooked the fact that 90 percent of the time on the job is spent traveling from campsite to campsite. The court's findings of fact, however, referred to Dr. Goodman's deposition testimony that he did not believe Treadwell could safely perform such duties as operating a motorboat alone, walking over rough terrain, or handling disorderly park visitors. The court's opinion concluded that the plaintiff could not physically perform other essential functions such as working alone. Thomas Lewis, the supervisor of park technicians, testified that each of the functional and environmental factors is essential to the position for which Treadwell applied at Clark's Hill Lake. Furthermore, the essential nature of a particular job function is not determined *solely* by the amount of time devoted to it. That a technician might be called upon to operate a motorboat alone only occasionally does not make that job function any less essential or make it unrelated to the job.

Finally, Treadwell argues that by using an improper standard to define the term "otherwise qualified individual," the district court failed to require the defendants to sufficiently show that reasonable accommodations either could not be made or would pose an undue hardship on the employer. *See Prewitt v. United States Postal Service,* 662 F.2d at 307–09.

■ The Supreme Court has held in a case decided under § 504 of the Act that an "otherwise qualified [handicapped] person is one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). A plaintiff who could perform the essentials of the job if afforded reasonable accommodation would be entitled to relief. The necessity for providing reasonable accommodation is derived from

7. The relevant portion of Goodman's letter stated:

When I talked with Mr. Treadwell in regard to this job and agreed to do the physical examination, it was my understanding from him that the job would be rather sedentary in character, and therefore, I felt that he probably would be able to do that. However, having seen the requirements that you listed in your recent letter, I do not feel that Mr. Treadwell is physically able to do the jobs that would be required as was stated. I talked with Dr. Hutchinson, who was the surgeon for his coronary bypass surgery and cardiac pacemaker placement, and it was also his feeling that Mr. Treadwell would not be physically able to perform the jobs as stated.

Therefore, I would not recommend Mr. Treadwell for the job for which he is being considered.

the express language of § 501(b) requiring the federal government to undertake affirmative action on behalf of handicapped applicants and employees. *See* n. 1 *supra.* Although the plaintiff initially has the burden of coming forward with evidence to make at least a facial showing that his handicap can be accommodated, the federal employer has the ultimate burden of persuasion in showing an inability to accommodate. *See* 29 C.F.R. § 1613.704 (1982).[8] The 1978 amendments to the Act expressly provide that district courts may consider the cost of any necessary workplace accommodation in fashioning remedies for violations of § 501. 29 U.S.C.A. § 794a(a)(1). One of the regulations promulgated to implement § 501, 29 C.F.R. § 1613.704, sets out the factors to be considered in determining whether an accommodation would impose an undue hardship on an agency's operations. These include:

> (1) The overall size of the agency's program with respect to the number of employees, number and type of facilities and size of budget; (2) the type of agency operation, including the composition and structure of the agency's work force; and (3) the nature and the cost of the accommodation.

29 C.F.R. § 1613.704(c) (1982).

■ The district court concluded that it would have been necessary for the Corps to require other park technicians to perform many of plaintiff's duties had he been hired. Given that only two to four other workers are available at any given time to patrol the 150,000 acres at Clark's Hill Lake and in light of the agency's limited resources, the court concluded that such "dou-

bling up" would impose an "undue hardship" on the defendants. The evidence supports the court's conclusions in this regard. Additionally, in determining whether Treadwell could perform the job, the Corps properly considered its previous experience with a technician who had undergone bypass surgery and who subsequently decided on his own to retire because the position was too arduous. Once the Corps presented credible evidence on the point, it was incumbent on plaintiff to rebut it with evidence concerning his individual capabilities and suggestions for possible accommodations. Nothing in the record suggests Treadwell met this evidentiary requirement or that the court's conclusions were clearly erroneous.

AFFIRMED.

---

8. The regulation provides:

(a) An agency shall make reasonable accommodation to the known physical or mental limitations of a qualified handicapped applicant or employee unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program.

(b) Reasonable accommodation may include, but shall not be limited to: (1) Making facilities readily accessible to and usable by handicapped persons, and (2) job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, appropriate adjustment or modifica-

tion of examinations, the provision of readers and interpreters, and other similar actions.

(c) In determining pursuant to paragraph (a) of this section whether an accommodation would impose an undue hardship on the operation of the agency in question, factors to be considered include: (1) The overall size of the agency's program with respect to the number of employees, number and type of facilities and size of budget; (2) the type of agency operation, including the composition and structure of the agency's work force; and (3) the nature and the cost of the accommodation.

29 C.F.R. § 1613.704 (1982).