**Julia GUINN, Plaintiff,**

v.

**William F. BOLGER, Postmaster General of the United States, Defendant.**

**Civ. A. No. 83–1319.**

United States District Court, District of Columbia.

Nov. 26, 1984.

---

Daniel B. Jordan, Washington, D.C., for plaintiff.

Rebecca L. Ross, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiff Julia Guinn brings this action against defendant William F. Bolger, Postmaster General of the United States, under Sections 501(b) and 505(a)(1) of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791(b), 794a(a)(1).[1] Plaintiff, a current employee of the United States Postal Service (USPS), claims that defendant discriminated against her on the basis of a handicapping condition by sending her home from work without pay before she had completed an eight-hour work shift on numerous occasions when she was on light duty status between May and November of 1982. Plaintiff requests injunctive and declaratory relief against defendant and an award of back pay and attorney's fees. The parties' cross motions for summary judgment are now before the Court.

*Facts*

The material facts underlying plaintiff's allegations are not in dispute. Plaintiff has been employed by the USPS since February 24, 1966, first as a postal clerk, then as a manual distribution clerk, and, since approximately 1979, as a multiple position letter sorting machine (MPLSM) operator. The function of the MPLSM is to sort mail automatically for distribution. The machine is operated by a crew of workers who rotate through three assignments: ledge-loading (emptying mail from trays onto ledges at the front consoles of the MPLSM), keying address distribution codes, and clearing letters from bins at the back of the machine where they are automatically transported by the machine after coding. Throughout her employment as an MPLSM operator, plaintiff has performed not only those three duties but others as well, including "culling" packages from conveyor belts and manual sorting. Some weeks she would work three, four or five days on the MPLSM, some weeks not at all. Guinn Dep. at 6–7. Plaintiff is employed on Tour II at the Washington, D.C. Post Office (7:00 a.m.–3:30 p.m.) and works five days a week.

On April 5, 1982, plaintiff consulted Dr. John Albrigo, an orthopedic surgeon, complaining of swelling, pain and stiffness of her knee joints. Dr. Albrigo diagnosed her condition as permanent osteoarthritis of the knee joints and recommended that she avoid work requiring prolonged periods of standing. As a result of that advice, plaintiff requested that USPS assign her to "light duty" consistent with her medical restrictions. She was granted temporary light duty status in April, 1982, and that status was renewed several times until the six-month maximum allowable term for temporary light duty expired on November

---

1. It is clear from the pleadings that plaintiff's references to "Section 794(a)(1)" are intended as references to Section 794a(a)(1).

17, 1982. On light duty, plaintiff performed, in addition to her MPLSM functions, manual distribution work using a rest bar and other jobs which could be done in a sitting position.

Beginning on June 16, 1982, postal management determined that the mail volume on Tour II at the Washington D.C. Post Office did not justify the number of employees on hand. Consequently, management decided to send home employees on light duty assignments as a cost-cutting measure. Plaintiff and other light duty employees were sent home short of working a full eight-hour day on 42 occasions prior to November, 1982. As a consequence, plaintiff was not paid or was permitted to use her accumulated leave for 270 scheduled hours that she did not work between May and November, 1982. Full-time employees not on light duty and employees on limited-duty status who had been injured while on duty were permitted to remain at work. Those employees had contractual guarantees of eight hours of work or pay per day, and sending them home would not result in any savings to the USPS.

Plaintiff filed a series of administrative complaints commencing on or about July 20, 1982, complaining that sending her home involuntarily because she was on light duty constituted discrimination based on a handicapping condition. Her administrative complaints were denied by USPS, and the Equal Employment Opportunity Commission ("EEOC") sustained that denial by order dated March 22, 1983. The EEOC decision included a notice of right to sue; plaintiff filed this action on May 6, 1983. In addition, she has filed a grievance with her union bargaining representative and that grievance is presently awaiting arbitration.

*Discussion*

The 1978 amendments to the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, provide a private cause of action to persons subjected to handicap discrimination by the federal government and its agencies. *Prewitt v. U.S. Postal Service*, 662 F.2d 292, 302 (5th Cir.1981). Those amendments added Section 505(a)(1),[2] establishing a private cause of action in favor of persons pursuing claims under Section 501 of the Rehabilitation Act,[3] and expanded Section 504's proscription against handicap discrimination to cover programs or activities conducted by any executive agency or by the USPS.[4] *Id.* at 304.

In light of the 1978 amendments the causes of action cognizable under Sections 501 and 504 overlap in part, and both provi-

2. Section 505(a)(1), 29 U.S.C. § 794a(a)(1), provides:

"The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964, including the application of sections 706(f) through 706(k), shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy."

3. The duties of the federal government are set forth in Section 501(b), 29 U.S.C. § 791(b) as follows:

"Each department, agency, and instrumentality (including the United States Postal Service and the Postal Rate Commission) in the executive branch shall ... submit to the Civil Service Commission and to the [Interagency Committee on Handicapped Employees] an affirmative action program plan for the hiring, placement, and advancement of handicapped individuals in such department, agency, or instrumentality. Such plan shall include a description of the extent to which and methods whereby the special needs of handicapped employees are being met."

4. Section 504, 29 U.S.C. § 794 states in pertinent part:

"No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or any program or *activity conducted by any Executive agency or by the United States Postal Service.*" (Emphasis supplied.)

**200**

sions would allow redress of this plaintiff's particular claim, if proven. *Id.* at 304, *see also Smith v. U.S. Postal Service,* 742 F.2d 257 (6th Cir.1984). Plaintiff has chosen to bring her claim under Section 501 and thus, pursuant to Section 505(a)(1), the remedies, procedures and rights set forth in Section 717 of Title VII of the Civil Rights Act of 1964 ("Title VII") govern this action. *Shirey v. Devine,* 670 F.2d 1188, 1194 (D.C.Cir. 1982); *Prewitt,* 662 F.2d at 303.[5]

■ The burdens ot proof in Rehabilitation Act cases under both Sections 501 and 504 are modeled after those developed under Title VII case law. *See Guerriero v. Schultz,* 557 F.Supp. 511, 513 (D.D.C.1983); *Mantolete v. Bolger,* 32 FEP Cases 1438, 1440 (D.Ariz.1982) (Section 504 and Section 501 cases, respectively, applying Title VII burdens of proof set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973)). The plaintiff has the initial burden of proof to make out a *prima facie* case of discrimination. *McDonnell Douglas* at 801–02, 93 S.Ct. at 1823–24; *Mantolete* at 1440. To meet that burden, she must show (1) that she is handicapped within the meaning of the Rehabilitation Act, which defendant has conceded at oral argument, (2) that she is a "qualified handicapped person", and (3) that defendant's practice of sending plaintiff home from work before completion of her shift was

motivated by her handicap or caused a handicap-related disparity, regardless of defendant's intent. *See Segar v. Smith,* 738 F.2d 1249, 1266–67 (D.C.Cir.1984); *see also Prewitt, supra.*

■ The requirement that plaintiff be a "qualified handicapped person" is found not in the text of Section 501 but rather in the EEOC regulations which state, as general policy, that with respect to hiring, placement and advancement, "an agency shall not discriminate against a *qualified* physically or mentally handicapped person." 29 C.F.R. § 1613.703 (emphasis added). That policy applies to discrimination programs established by the U.S. Postal Service, among other entities. *See* 29 C.F.R. § 1613.701(b). A "qualified handicapped person" is defined under the regulations as one who:

... with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others....

29 C.F.R. § 1613.702(f). Thus, under this scheme of regulations, plaintiff's *prima facie* case must include a showing that with or without reasonable accommodation, she was able to perform the essential functions of her job when she was sent home from work between May and November, 1982.[6]

5. Defendant does not dispute that plaintiff has exhausted her administrative remedies, as she is required to do under Title VII procedure. *See Prewitt,* 662 F.2d at 303; *Connolly v. U.S. Postal Service,* 579 F.Supp. 305, 307 (D.Mass.1984).

6. The case law has led to some confusion regarding the effect of the phrase "with or without reasonable accommodation" in Section 501 actions. In a Section 504 action against a private employer receiving Federal funds, the Supreme Court has held that an "otherwise qualified [handicapped] person" within the meaning of Section 504 is "one who is able to meet all of a program's requirements *in spite of* his handicap", as opposed to one who would be able to meet the program's requirements in every respect except as to limitations imposed by his or her handicap. *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979) (emphasis added). Section 501, unlike Section 504, does not refer to

"otherwise" qualified handicapped persons, and the Court of Appeals for this Circuit has left open the possibility that, despite the language of *Southeastern,* the affirmative action obligation of Section 501 may "require or permit *more* than mere equal treatment—*i.e.* some reasonable degree of modification to accommodate certain handicaps." *Shirey,* 670 F.2d at 1204 n. 46. The Eleventh Circuit Court of Appeals squares the language of *Southeastern* with the affirmative action obligations imposed by Section 501 (but absent from Section 504) by quoting the Supreme Court's above-cited holding and concluding:

"A [federally-employed] plaintiff who could perform the essentials of the job *if afforded reasonable accommodation* would be entitled to relief. The necessity for providing reasonable accommodation is derived from the express language of § 501(b) requiring the federal government to undertake affirmative action on behalf of handicapped applicants and employees." *Treadwell*

■ The central issue at the oral hearing on this motion was the scope of the "essential functions" of plaintiff's job. Plaintiff argues that the boundaries of the essential functions of an MPLSM operator's job are set by the standard position description (SPD) for that position. The SPD (DX–B) states that the "basic function" of an MPLSM clerk is to "operate an electro mechanical machine ..." and that the "duties and responsibilities" of the job include the ledge-loading, address-code keying, and bin-emptying functions described in the facts of this opinion, as well as culling nonmachinable mail from the MPLSM,[7] verifying sorted mail for accuracy, tying mail in bundles, traying and/or dispatching. All of these functions are related to operation of the MPLSM. The SPD also states that an MPLSM clerk may be required to qualify on one or more distribution schemes[8] where essential to the assignment and may also be required to perform manual distribution. Necessary skills listed in the SPD include knowledge and application of distribution schemes or memory items used for non-ZIP-coded mail, an ability to operate the MPLSM with 98% accuracy and at fixed sorting speeds, manual and visual coordination, and close visual attention. The USPS qualification standard for this position refers the reader to the SPD for a description of the work, restates the SPD in part, and states minimum eyesight requirements for MPLSM operators.[9] Plaintiff argues that her physical limitations do not restrict her ability to perform any and every task described in the SPD, and on that basis she argues that she is "qualified" within the meaning of 29

C.F.R. § 1613.702(f) to maintain a handicap discrimination claim.

Defendant responds that the position description does not reflect the true parameters of plaintiff's job. According to the Declaration of Carl Leon Pink ("Pink Decl."), a USPS tour superintendent, "LSM clerks perform many other duties in addition to those directly associated with the MPLSM. The additional duties may include dumping sacks of mail as they come into the Post Office." This culling, which the Court understands is more rigorous than the "culling" which takes place at the MPLSM and is referenced in the SPD,[10] involves "standing at a conveyor belt...." Pink Decl. at ¶ 6. The tour superintendent further states that "[b]ecause of the varied duties of an LSM operator, it is essential that an LSM operator be capable of standing for prolonged periods." Pink Decl. at ¶ 7. As defendant's condition will not permit her to do work requiring prolonged standing, defendant argues that she has not met the *prima facie* requirement of showing that she is "qualified" within the meaning of Section 1613.702(f).

Defendant has erred in defining the "essential functions" of plaintiff's job with reference to the tasks she actually performs as opposed to those set forth in the SPD. Plaintiff's deposition confirms that throughout her tenure as an MPLSM clerk she was assigned to perform tasks unrelated to operation of that machine, including culling at the conveyor belt, an assignment requiring prolonged standing. However, her willingness (or at least, non-refusal) to follow the orders of her supervisor cannot be turned against her to limit her rights to the protection of the Rehabilitation Act.

*v. Alexander,* 707 F.2d 473, 477 (11th Cir.1983) (emphasis added); *see also Jasany v. U.S. Postal Service,* 33 FEP Cases 1115, 1117 (N.D.Ohio 1983) (Section 504 action against federal employer with affirmative action obligation). For the reasons that follow in the text, this case turns not on the issue of accommodation but on the definition of the essential functions of plaintiff's job.

7. Plaintiff asserts, and defendant appears not to dispute, that the culling function listed in the SPD involves only culling at the MPLSM and

not culling heavy boxes from the Post Office conveyor belts. *See* Plaintiff's Memorandum in Opposition to Defendant's Cross-Motion at 6.

8. A "scheme" is a list of several hundred memory items used by a clerk sorting mail to associate addresses with delivery routes. Declaration of David Robinson at ¶ 5.

9. Attachment to Declaration of Kaye DeShields dated July 19, 1984.

10. *See* n. 7, *supra.*

Regardless of the nature of the work she actually performed, the "essential functions" of the job she was hired to do remained the same. Defendant's argument that SPDs provide only rough estimates of "essential functions" and are designed for the purpose of fixing compensation rates (*See* Declaration of Fred J. Hintenach, DX–11 at ¶ 2) is wholly unconvincing.

The Court can of course appreciate the need for employee flexibility in an institution like USPS with operational needs which vary from one facility to the next, from one tour to the next, and from one day to the next. Plaintiff herself has stated that the number of hours actually spent at the MPLSM per week vary considerably. Defendant is free to expand or contract the duties of an employee to suit its changing needs, but in so doing cannot alter plaintiff's right to seek protection under the Rehabilitation Act on the basis of her own job description. Numerous courts entertaining Rehabilitation Act claims have looked to position descriptions in assessing the essential functions of a job. *See e.g., Treadwell,* 707 F.2d at 476 n. 5; *Prewitt,* 662 F.2d at 298; *Coleman v. Darden,* 595 F.2d 533, 535 (10th Cir.1979), *cert. denied,* 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979); [11] *Jasany,* 33 FEP Cases at 1117 (holding that because plaintiff was not *hired* "as a general postal employee to serve various functions within the post office" but "was employed specifically" as the operator of a high speed letter sorting machine, defendant's duty to provide reasonable accommodation for his handicap was limited to "adjustments within the job for which [he] was hired"); *see also Daubert v. U.S. Postal Service,* 733 F.2d 1367, 1368 (10th Cir.1984) (drawing job requirements from vacancy announcement). In some of these cases agency affidavits were submitted to reinforce position descriptions, *see Prewitt,* 662 F.2d at 298; in none were they used as evidence that a position description misstated the duties of a job.

Defendant, not plaintiff, is responsible for the content of the SPD and plaintiff is entitled to rely on it as a statement of the essential functions of her job for the purpose of stating a *prima facie* case under the Rehabilitation Act. By asserting that she stands ready to perform any task listed in that SPD, even without accommodation, and that defendant's decision to send her home from work had a discriminatory impact or motivation, plaintiff has made a *prima facie* case of handicap discrimination.

■ The burden of persuasion now shifts to defendant to challenge plaintiff's showing or produce an explanatory defense for its practice of dismissing plaintiff on reduced-volume work days. *See Segar,* 738 F.2d at 1267–68. Defendant explains its practice as an economic measure compelled by "business necessity", *see Prewitt,* 662 F.2d at 306: in the words of the tour supervisor, light duty employees such as plaintiff who had no contractual right to eight hours of work or pay per day, were the most "expendable". PX–P1. The paradox of this explanation is that plaintiff's status as a light duty employee during the time in question traces to defendant's redefinition of her job. Had defendant required that plaintiff perform only those functions she was hired to do, she would have had no reason or basis for claiming light duty status. In other words, had defendant honored its own SPD's job description, plaintiff would have remained on full duty and defendant would have had no economic incentive to release her from work early without pay. In these circumstances, defendant's proffered justification for its action disintegrates, and plaintiff's *prima facie* case stands unrebutted. Under *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Court's inquiry is complete. Accordingly, it is, by the Court, this 26th day of November, 1984.

---

**11.** In *Stalkfleet v. U.S. Postal Service,* 6 MSPB 536, 541 (1981), a case without precedential value, the MSPB relied on *Coleman* in holding that "an examination of the legitimate job re-

quirements and duties set forth in the position description is essential to the resolution" of the plaintiff's Section 501 claim.

ORDERED that defendant's motion for summary judgment is hereby denied; and it is further

ORDERED that plaintiff's motion for summary judgment is hereby granted.

An appropriate Judgment accompanies this Memorandum Opinion and Order. Plaintiff has not yet provided to the Court the precise figure representing plaintiff's monetary losses resulting from defendant's discriminatory actions. She is, nonetheless, entitled to that sum, to be determined by the parties, which will compensate her for all wages and other benefits lost as a result of defendant's practice of releasing plaintiff from her duties prior to the end of an 8-hour work day by reason of her status as a light-duty employee between May, 1982 and November, 1982.

No further hearing shall be necessary and this cause therefore stands concluded.