**Daniel de la TORRES, Plaintiff-Appellant,**

v.

**William F. BOLGER, Postmaster General, U.S. Postal Service, et al., Defendants-Appellees.**

**No. 85–1375 Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Feb. 5, 1986.

Daniel de la Torres, pro se.

Charles Chestnutt, Dallas, Tex., for plaintiff-appellant.

James A. Rolfe, U.S. Atty., Charles Ory, Asst. U.S. Atty., Dallas, Tex., Sherry A. Cagnoli, Asst. Gen. Counsel, Lori Joan Dym, Office of Labor Law, U.S. Postal Service, Washington, D.C., for defendants-appellees.

Before CLARK, Chief Judge, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

---

**PER CURIAM:**

Appellant Daniel de la Torres challenges the district court's dismissal of his employment discrimination suit against the Postmaster General. Because the district judge correctly found that de la Torres was not handicapped within the meaning of the Rehabilitation Act of 1973, as amended, we affirm.

**I**

The United States Postal Service hired Daniel de la Torres as a part-time flexible letter carrier for a ninety-day probationary period beginning on June 3, 1978. De la Torres is left-handed. He received a routine three-day general orientation and three days of initial training in street mail delivery. His supervisor recommended additional training because de la Torres took too long to complete his rounds. De la Torres received sixteen additional hours of training.

Both of de la Torres' trainers instructed him to use his right hand to finger and deliver mail because he appeared awkward when he used his left hand. De la Torres used his left hand to deliver mail, however, on unsupervised rounds. De la Torres violated postal safety regulations when he allowed his son to ride with him in a postal vehicle on July 2, 1978. He received an unsatisfactory rating in four out of twelve categories on his thirty-day evaluation report. The four unsatisfactory ratings were for progress in learning the job, progress in learning required schemes, productivity and work habits, and safety.

The Postal Service terminated de la Torres on July 14, 1978, purportedly because of his unsatisfactory slowness in delivering mail. After an unsuccessful appeal to the Equal Employment Opportunity Commission, de la Torres filed suit against the Postmaster General in the United States District Court for the Northern District of Texas. He alleged that his supervisors regarded his left-handedness as a handicap and that his discharge because of that handicap was unlawfully discriminatory under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.* (the Act).

The district court dismissed de la Torres' suit after a bench trial. 610 F.Supp. 593. The judge found de la Torres' evidence that his discharge was due to being left-handed rather than slowness was credible. The judge dismissed the case, however, because he found that de la Torres had not demonstrated he was a "handicapped individual" within the meaning of the Act.

**II**

■ Section 501 of the Rehabilitation Act of 1973 provides for the establishment of an affirmative action program for the employment of handicapped individuals within the United States Postal Service. 29 U.S.C. § 791(b). Section 504 prohibits the United States Postal Service from discriminating against any "otherwise qualified handicapped individual ... as defined in section 706(7) ... solely by reason of his handicap...." 29 U.S.C. § 794. Amendments to the Act in 1978 provided that claims under section 501 should be patterned after Title VII of the Civil Rights Act of 1964, and that claims under section 501 should be patterned after Title VI of the Civil Rights Act of 1964. 29 U.S.C. §§ 794a(a)(1), (2).[1] To maintain a suit under either provision, a plaintiff must first demonstrate that he is a "handicapped individual" within the meaning of the Act. *Doe v. Region 13 Mental Health-Mental Retardation Comm'n,* 704 F.2d 1402, 1407–08 (5th Cir.1983) (§ 504); *Guinn v. Bolger,* 598 F.Supp. 196, 200 (D.D.C.1984) (§ 501).

---

1. The Fifth Circuit has held that both sections 501 and 504 provide for a private cause of action against the federal government for handicap discrimination. *See Prewitt v. United States Postal Service,* 662 F.2d 292, 301–04 (5th Cir. 1981); *accord Smith v. United States Postal Service,* 742 F.2d 257, 262 (6th Cir.1984) (plaintiff must exhaust administrative remedies first before bringing claim under § 501 or § 504). *But see Boyd v. United States Postal Service,* 752 F.2d 410, 413 (9th Cir.1985) (holding section 501 is the exclusive remedy for handicap discrimination against the Postal Service); *accord McGuinness v. United States Postal Service,* 744 F.2d 1318, 1321–22 (7th Cir.1984) (noting this distinction is a "matter of merely technical interest").

For purposes of sections 501 and 504, the Act defines "handicapped individual" as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(7)(B). Although the Act does not clarify this definition, regulations adopted by the Equal Employment Opportunity Commission (EEOC) provide further guidance. The section of the Act that provides for the establishment of affirmative action programs, section 501, authorizes these regulations. *See* heading preceding 29 C.F.R. § 1613.-701. The express purpose of the regulations, however, is to assure that these affirmative action programs continue and to outline the procedures a federal agency should follow in processing complaints alleging handicap discrimination. 29 C.F.R. § 1613.701(a). Furthermore, the EEOC regulations contain the same definition of "handicapped individual" that the Act provides in reference to both sections 501 and 504. *Compare* 29 C.F.R. § 1613.-702(a) *with* 29 U.S.C. § 706(7)(B). The additional definitions provided by the regulations apply, therefore, to an analysis of a claim of handicap discrimination under either of these sections.

The following explanations accompany the definition of a handicapped person in the EEOC regulations:

(b) "Physical or mental impairment" means (1) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological; musculoskeletal; special sense organs; cardiovascular; reproductive; digestive; genito-urinary; hemic and lymphatic; skin; and endocrine; or (2) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

(c) "Major life activities" means functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

(d) "Has a record of such an impairment" means has a history of, or has been classified (or misclassified) as having a mental or physical impairment that substantially limits one or more major life activities.

(e) "Is regarded as having such an impairment" means (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; (2) has a physical or mental impairment that substantially limits its major life activities only as a result of the attitude of an employer toward such impairment; (3) or has none of the impairments defined in (b) of this section but is treated by an employer as having such an impairment.

29 C.F.R. § 1613.702(b)–(e).

De la Torres asserts that the district judge erred in looking to these regulations. He claims the appropriate definitions are those in 41 C.F.R. 60–741.2, and that under those definitions his left-handedness substantially limited his ability to obtain and maintain employment. Section 503 of the Rehabilitation Act, 29 U.S.C. § 793, authorizes those regulations. *See* heading preceding 45 C.F.R. § 60–741.1. Section 503 places affirmative action duties on federal entities that contract for personal property and nonpersonal services for a price in excess of $2500. *See* 29 U.S.C. § 793. The case at bar concerns a United States Postal Service employment matter, to which section 501 expressly speaks, and not a contract matter encompassed by section 503. The district judge applied the appropriate regulations in adjudicating de la Torres' case.

### III

The district court held that de la Torres failed to satisfy the threshold requirement for a handicap discrimination suit. The judge found that being left-handed was not an "impairment" under the Act and did not "substantially limit" de la

Torres' ability to work. Because we hold that de la Torres failed to satisfy the first element of the definition of "handicapped individual" by showing that being left-handed is an "impairment," we need not address the second element of the definition—whether being left-handed "substantially limited" one of de la Torres' "major life activities."

Case law interpreting the definition of "handicapped individual," and of "impairment" in particular, is limited. One court has held that "impairment" does not include "transitory illnesses which have no permanent effect on the person's health." *Stevens v. Stubbs,* 576 F.Supp. 1409, 1414 (N.D.Ga.1983) (citing cases). The employer in that case downgraded the plaintiff's position because of the plaintiff's unsatisfactory performance and excessive use of sick leave, after a physician certified the plaintiff healthy and able to return to work. The court held that the plaintiff had not demonstrated a handicap as defined by the Act, but only that he "may have suffered from an undisclosed transitory illness which may have required him to take periods of sick leave." *Id.* The court further determined that the plaintiff's supervisors "perceived him as *physically* fit to perform his job." *Id.* at 1415 (emphasis in original). Their concern was for his excessive use of sick leave for questionable reasons and his "inability to perform his job functions." *Id.* at 1414.

Another court has held that a plaintiff who could not meet his prospective employer's valid weight requirements because of his voluntary, avid body building program had no impairment cognizable under the Act.[2] *Tudyman v. United Airlines,* 608 F.Supp. 739, 746 (C.D.Cal.1984). The court noted that "[w]hat [the] plaintiff is really suing for is his right to be both a body builder and a flight attendant, a right that

§ 504 was not intended to protect." *Id.* Similarly, the Sixth Circuit has noted that "[c]haracteristics such as average height or strength that render an individual incapable of performing particular jobs are not covered by the statute because they are not 'impairments.'" *Jasany v. United States Postal Service,* 755 F.2d 1244, 1249 (6th Cir.1985) (emphasis in original) (footnote omitted).

In other section 501 and section 504 cases that focused on issues other than whether the plaintiff was a handicapped individual, other courts have determined, or accepted without question, that the following mental and physical conditions constitute a "physical or mental impairment" under the Act: chronic tuberculosis, *Arline v. School Board of Nassau County,* 772 F.2d 759 (11th Cir.1985); legal blindness, *Norcross v. Sneed,* 755 F.2d 113 (8th Cir.1985); manic depressive syndrome, *Gardner v. Morris,* 752 F.2d 1271 (8th Cir.1985); ankylosing spondylitis, which causes stiffening of the joints and limited the plaintiff's movement of his spine, knees, elbows, and wrists, *Sisson v. Helms,* 751 F.2d 991 (9th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985); nervous and heart conditions, *Treadwell v. Alexander,* 707 F.2d 473 (11th Cir.1983); multiple sclerosis, *Pushkin v. Regents of the University of Colorado,* 658 F.2d 1372 (10th Cir. 1981); blindness in one eye, *Holly v. City of Naperville,* 603 F.Supp. 220 (N.D.Ill. 1985); heart condition, *Bento v. I.T.O. Corporation of Rhode Island,* 599 F.Supp. 731 (D.R.I.1984); permanent osteoarthritis of the knee joints, *Guinn v. Bolger,* 598 F.Supp. 196 (D.D.C.1984); cerebral palsy, nocturnal epilepsy and dyslexia, *Fitzgerald v. Green Area Education Agency,* 589 F.Supp. 1130 (S.D.Iowa 1984); right leg amputated below the knee cap, *Longoria v. Harris,* 554 F.Supp. 102 (S.D.Tex.1982);

---

**2.** The *Tudyman* court looked to the regulations contained in 45 C.F.R. § 84.3(j). These regulations complement § 504 of the Rehabilitation Act as it pertains to programs or activities that receive financial assistance. 45 C.F.R. § 84.1. The plaintiff's prospective employer was an airline company receiving federal assistance rather

than a government agency. Unlike the regulations that de la Torres erroneously urges us to follow, these regulations contain the same explanations of the terms in the Act's definition of handicapped individual as the regulations contained in 29 U.S.C. § 1613.702. *See* 45 C.F.R. § 84.3(j).

hypersensitivity to tobacco smoke, *Vickers v. Veterans Administration*, 549 F.Supp. 85 (W.D.Wash.1982).

### IV

In this case, the district court held that the term, "impairment," as it is used in the Act, "cannot be divorced from its dictionary and common sense connotation of a diminution in quality, value, excellence or strength." Logic, reasoned precedent, and the EEOC regulations support that holding. Being left-handed is a physical characteristic, not a chronic illness, a disorder or deformity, a mental disability, or a condition affecting de la Torres' health. It is not an "impairment" as contemplated by the Act. The district judge found that de la Torres' supervisors may have had a bias against left-handed persons. There was no proof, however, that they viewed this trait as an "impairment," as the Act defines that term.

De la Torres failed to make out a prima facie case of handicap discrimination because he failed to demonstrate that he is a handicapped individual under the Act. The district judge correctly dismissed his suit.

The judgment appealed from is

AFFIRMED.