**Joyce D. CARTER, Plaintiff–Appellee,**

v.

**CASA CENTRAL, Defendant–Appellant.**

**No. 86–2177.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 6, 1987.

Decided June 27, 1988.

James A. Brandvik, Jacobson, Brandvik & Anderson, Karen G. Fisher, Chicago, Ill., for defendant-appellant.

Stephen G. Seliger, Stephen G. Seliger, Ltd., Chicago, Ill., for plaintiff-appellee.

Before EASTERBROOK, RIPPLE and MANION, Circuit Judges.

MANION, Circuit Judge.

Defendant-appellant Casa Central appeals from a judgment of the district court, following a bench trial, awarding plaintiff-appellee Joyce D. Carter $25,000 in back pay on her handicap discrimination claim brought under § 504 of the Rehabilitation Act of 1973. 29 U.S.C. § 794. We affirm the judgment of the district court.

## A. BACKGROUND

### 1. Facts

Casa Central is a not-for-profit corporation serving Chicago's Hispanic community.

Carter, a registered nurse, worked as the director of nursing at the nursing home run by Casa Central. In early 1984, Carter took a three-month medical leave of absence which was to expire on May 5, 1984. She entered the hospital in February 1984; her condition was then described as cerebellar ataxia of uncertain origin. As Carter's doctor explained at trial, ataxia means a loss of coordination, while cerebellar refers to the cerebellum, the area of the brain concerned with balance and coordination. Cerebellar ataxia can be one of the symptoms of multiple sclerosis. Carter was, in fact, later diagnosed as having multiple sclerosis.[1]

In April, Carter's physician, Dr. Barry Levy, a neurologist, prepared a report which indicated that she was able to perform the duties of the job of director of nursing with the "exception or possible exception" of "resolving ataxia of gait, which may limit her ability to walk or be on her feet for prolonged periods of time." The form on which Dr. Levy made his report was provided by Casa Central. Dr. Levy suggested that Carter start back to work on a part-time basis, building up to full-time before May 5, when her leave expired. Dr. Levy testified that he routinely recommended that his patients begin by returning to work part-time.

After receiving the go-ahead from her doctor, Carter then attempted to return to her job at Casa Central. Precisely what occurred when Carter attempted to return to work was contested at trial. Carter's version of events contrasted sharply with that of the Rev. Mr. Daniel Alvarez, Casa Central's director.

### a. The April Meeting

In early April, Carter met with Alvarez concerning her return to work. Carter testified that she told Alvarez that she had consulted with her doctor and wanted to return to work part-time, working up to full time by May 5, the day her leave of absence expired. Because Alvarez would not read Dr. Levy's medical report, Carter said she read it to him and stated that she was ready, willing, and able to return to work. According to Carter, "Rev. Alvarez kept interrupting me and telling me that I should stay home and take care of myself...." He told her that he needed someone that could work full-time and finally offered her a part-time consulting position. Carter told him that she could do the job of director of nursing, but he still resisted. Carter, exasperated, finally asked Alvarez to write her a letter outlining the duties, hours, and salary of the consulting position he was offering her. Carter further testified that she received such a letter after a telephone conversation with Alvarez at the end of April.

Alvarez's testimony differed significantly from that of Carter. He testified that Carter informed him that she wanted to return to work on a part-time basis:[2]

many people have intermittent flare-ups of the disease, intermittent periods of weakness or other neurologic loss of function and will recover from those and they would be able to lead fairly normal lives for a number of years, many years in a number of cases.

---

1. Carter's neurologist testified about multiple sclerosis:

   Multiple sclerosis is a disease that affects the central nervous system, that is the brain and spinal cord. The cause is not fully understood at this point. In some way it is felt that the body's immunity system that normally helps fight off disease turns against a component called myelin, which is the, in essence, the insulation around a nerve fiber, and when that happens the transmission along the nerve pathways is disrupted, and depending on what area of the nervous system is affected it can cause various symptoms. A characteristic of the disease is that it can affect different areas of the nervous system at different times....

   Multiple sclerosis is a very variable disease. Certainly there are some people that have severe courses and that are incapacitated, but

2. Alvarez's testimony in this regard was impeached by his prior response to an interrogatory requesting Casa Central's reasons for refusing to reinstate Carter. Although the response mentions that "Ms. Carter's weaknesses in supervision" were discussed with her some months prior to her leave of absence, it indicates that Casa Central learned in February that Carter "was disabled and unable to work full-time at her employment" and "decided not to accept Ms. Carter's return to work on a part-time basis."

[Mr. Seliger:] And the reason that you didn't take her back to work was because she said she only wanted to return to work part time?

[The Rev. Mr. Alvarez:] At that time, yes.

Q.: Well, was there a different reason for your refusal to return her to work at some other time?

A.: No, the question was that she had a leave of absence up to May 5th and she was supposed to return to work on that date full time.

Q.: And I think the question I asked you was, there was no other reason for your refusal to put her back to work other than the fact that she wanted to go back part time, correct?

A.: There was [sic] secondary reasons related to her performance but that I say secondary reasons because when she left in January, at the end of January, we had some serious concern about what happened in the three months prior to January.

Alvarez denied that Carter had shown him Dr. Levy's medical report or that she read it to him at the meeting. He later sent her a letter offering her a part-time consulting position.

### b. Dr. Levy's Letter

Later in April, Carter again contacted Alvarez. According to Carter, he then told her he did not believe she was able to return to work and she must obtain another letter from her doctor stating unequivocally that she was able to perform her job. Carter consulted an attorney who wrote to Alvarez demanding she be reinstated. Alvarez repeated his request for an unqualified letter. Carter obtained a letter from Dr. Levy. It stated:

To Whom It May Concern:

Mrs. Carter has been treated for a cerebellar ataxia of undetermined etiology which has been progressively improving. She is able to walk independently with only mild unsteadiness, and this continues to improve. I believe that she is able to work at this time.

At trial she testified that she mailed the letter to Alvarez, although she admitted that at the time of her deposition she had been unable to recall having done so.

Alvarez's testimony substantially agreed with that of Carter on the sequence of events. However, Alvarez denied ever having received a copy of Dr. Levy's letter. He stated that this letter would have met his requirements for an "unqualified" letter, as contrasted with Dr. Levy's first report, which he characterized as "inadequate." He also testified that had he received this letter, he would have reinstated Carter. Carter was never reinstated by Casa Central. In October of that year, Casa Central hired a permanent replacement.

### 2. District Court's Decision

The district court found that the director of nursing position exists as part of a program or activity receiving federal assistance, thus Casa Central was subject to § 504.[3] This finding is not challenged on appeal. At trial, Casa Central also conceded that Carter was a "handicapped individual" for purposes of the Rehabilitation Act, and, indeed, that determination is consistent with the then-applicable statutory and regulatory definitions. *See* 29 U.S.C. § 706(7)(B) (1983) (defining "handicapped individual"); 41 C.F.R. § 60–741, Appendix A (setting forth elements of § 706(7)(B)'s definition); 45 C.F.R. § 84.3(j)(2)(iii) (same); *Pushkin v. Regents of University of Colorado*, 658 F.2d 1372, 1376 (10th Cir.1981) (no dispute that plaintiff with multiple sclerosis was "handicapped individual").

The trial focused on two factors. Casa Central first attempted to prove that Car-

---

**3.** Section 504 of the Rehabilitation Act, 29 U.S. C. § 794, then provided in relevant part:

§ 794. Nondiscrimination under Federal grants and programs; promulgation of rules and regulations

No otherwise qualified handicapped individual ..., shall, solely by reason of his handi-

cap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

A 1986 amendment substituted "individual with handicaps" for "handicapped individual."

ter was not capable of performing the duties of director of nursing, but the district court concluded that Carter had proved that she was "otherwise qualified" to perform the director of nursing job. Casa Central also disputed that Carter was not reinstated following her leave of absence "solely by reason of her handicap." The district court noted that this issue presented a more difficult question; nonetheless, it found Carter "has established that she was excluded from her employment on account of her handicap," and awarded her $25,000 in back pay.[4]

The district court made a number of important factual findings. The court credited Carter's testimony that, at the April meeting, she had told Alvarez she wanted to return to work on a part-time basis, working up to full-time employment by the time her leave of absence expired. The district court also believed that Carter read Dr. Levy's report to Alvarez thus communicating her readiness, willingness, and ability to return to work and that in response, Alvarez offered her only a part-time consulting position. As to the qualification contained in the report concerning Carter's ability to walk or be on her feet, the court found that her "position as director of nursing required her to perform substantial [supervisory] and administrative duties which could be performed without the need to walk or stand for prolonged periods of time."

As to Dr. Levy's letter, the court found that Casa Central never received it. The court credited Alvarez's testimony that had he seen this letter, he would have let Carter resume her job on a full-time basis. As

a result, the court equitably reduced Carter's back pay award.[5]

Casa Central raises three issues on appeal. First, it challenges the district court's finding that Carter was denied her employment solely because of her handicap. Second, it claims that the court's finding that Casa Central never received the second letter from Dr. Levy, which it refers to as the "full medical release," is inconsistent with the finding that Carter was denied her job solely due to her handicap. Third, Casa Central asks us to decide whether the Rehabilitation Act requires an employer to keep a position open for eighteen months for an employee on a medical leave of absence.

3. Standard of Review

We are bound by the district court's factual findings unless they are clearly erroneous. Fed.R.Civ.P. 52(a). *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The clearly erroneous standard constrains a reviewing court to uphold the factual findings of the lower court unless it is " 'left with the definite and firm conviction that a mistake has been committed.' " *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511 [quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)]. It "can virtually never be clear error" for a court to choose between conflicting testimony. *Id.* at 575, 105 S.Ct. at 1512, *quoted in Gust K. Newberg Construction Co. v. E.H. Crump & Co.*, 818 F.2d 1363, 1365 (7th Cir.1987). This approach is a sensible one. It is, after all, the judge, acting as the trier of fact in

4. Casa Central does not challenge the district court's use of the *McDonnell–Douglas prima facie* case analysis, *see McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and apparently concedes that once a *prima facie* showing has been made, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. Brief of Appellant at 6. *But see Pushkin*, 658 F.2d at 1385–87 (rejecting "disparate treatment" analysis in actions under § 504; outlining elements of *prima facie* case); *see also Doe v. New York University*, 666 F.2d 761 (2d Cir.1981) (distinguishing suits in which defendant acknowledges relying on plaintiff's handicap from those in

which defendant denies reliance). In any event, issues concerning the *prima facie* case fade away after trial. *See Morgan v. South Bend Community School Corp.*, 797 F.2d 471, 480 (7th Cir.1986) [citing *United States Postal Service v. Aikens*, 460 U.S. 711, 715–16, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983)]; *Andre v. Bendix Corp.*, 774 F.2d 786, 792 (7th Cir.1985).

5. Alvarez testified that he first saw a copy of the letter after it was produced in discovery during the course of the litigation. The propriety of the court's reduction in the award of back pay is not challenged by Carter on appeal.

this case, who saw and heard the witnesses testify. We must give great weight to his credibility findings.

## B. DISCUSSION

### 1. Rehabilitation Act of 1973

■ Section 504 of the Rehabilitation Act of 1973 makes it unlawful for a federal grant recipient to discriminate against an otherwise qualified handicapped individual. *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 626, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984); *Anderson v. University of Wisconsin*, 841 F.2d 737, 740 (7th Cir.1988). The "Rehabilitation Act forbids discrimination based on stereotypes about a handicap, but it does not forbid decisions based on the actual attributes of the handicap." *Anderson*, 841 F.2d at 740. Its purpose is to protect "handicapped individuals from deprivations based on prejudice, stereotypes, or unfounded fear, while giving appropriate weight to such legitimate concerns as ... avoiding exposing others to significant health and safety risks." *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 1131, 94 L.Ed.2d 307 (1987). The Act attempts to replace " 'reflexive reactions ... with actions based on reasoned and medically sound judgments.' " *Anderson*, 841 F.2d at 740 (quoting *Arline*, 107 S.Ct. at 1129).

■ "Otherwise qualified" means, in the employment context, that the handicapped individual can perform the essential functions of the job. *Arline*, 107 S.Ct. at 1131 n. 17; *see also Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979) ("An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap."); *Jasany v. United States Postal Service*, 755 F.2d 1244, 1251 (6th Cir.1985); *Simon v. St. Louis County*, 656 F.2d 316 (8th Cir.1981), *cert. denied*, 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688

(1982). *Cf. Brennan v. Stewart*, 834 F.2d 1248, 1261–62 (5th Cir.1988).

■ A court must also consider whether any "reasonable accommodation" by the employer would enable the handicapped person to perform the essential functions of the job. *Arline*, 107 S.Ct. at 1131 n. 17; *see also id.* at 1131 n. 19. Casa Central's duty to reasonably accommodate Carter's handicap is not at issue here.

■ Finally, we must keep in mind that § 504 forbids only exclusion "solely by reason of [an individual's] handicap":

> Just as Title VII of the Civil Rights Act of 1964 ensures only equal treatment and not "correct" decisions, *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557 (7th Cir. 1987), so the Rehabilitation Act requires only a stereotype-free assessment of the person's abilities and prospects rather than a correct decision. *Cf. Namenwirth v. University of Wisconsin*, 769 F.2d 1235, 1242–43 (7th Cir.1985) (Title VII does not authorize de novo review of tenure decisions).

*Anderson*, 841 F.2d at 741–42. Good faith or a lack of discriminatory intent are not defenses to actions brought under § 504. *Alexander v. Choate*, 469 U.S. 287, 294–301, 105 S.Ct. 712, 716–720, 83 L.Ed.2d 661 (1985).

### 2. Analysis

■ There is no real dispute on appeal that Carter was "otherwise qualified" to perform the essential functions of the position of director of nursing. The district court so found and Casa Central does not seriously challenge that finding. In any event, it is not clearly erroneous. *See Brennan*, 834 F.2d at 1261. Dr. Levy, Carter's treating physician, testified that her illness would not prevent her from returning to work full-time. His testimony evidenced familiarity with the requirements of her job and Casa Central presented no evidence at trial that any aspect of Carter's handicap prevented her from fully performing her job.[6]

---

6. Alvarez did testify that the position was a demanding one, occasionally requiring efforts "above and beyond the call of duty." He also described the physical layout of Casa Central's

nursing home, apparently in an effort to show how much walking was required of the director of nursing in making rounds of the nursing home several times a day. On cross-examina-

■ Casa Central first challenges the district court's finding that Carter was denied employment solely because of her handicap. It contends that it showed at trial that "its reason for not reinstating Mrs. Carter was that she failed to provide a doctor's report on her physical condition." Casa Central thus argues that because Carter did not demonstrate to her employer, at the time she sought reinstatement, that she was "otherwise qualified" to return to her job, a claim of discrimination cannot be maintained. We disagree.

First, the district court found that Carter was denied her job solely as a result of her handicap. This finding is not clearly erroneous. Casa Central's primary defense at trial hinged on Alvarez's testimony that Carter wanted to return to work part-time. There was testimony that Illinois law requires a director of nursing to be a full-time employee. Casa Central maintained that it could not have reinstated Carter to the director of nursing position on a part-time basis without jeopardizing its license to operate.

Carter correctly notes that Casa Central's contention that she was not reinstated because she did not provide a full medical release was apparently not developed until late in the trial. In answers to interrogatories and during its opening statement, Casa Central stated that it did not reinstate Carter because she wanted to return on a part-time, rather than full-time, basis (an argument abandoned on appeal). *See* note 2, *supra*. At trial, the Rev. Mr. Edgar Morales, Carter's supervisor and the administrator of the nursing home, testified that Alvarez had told him that that was the reason Carter was not reinstated. At trial, Casa Central also attempted to show some deficiencies in Carter's performance but apparently did not rely on them in deciding not to reinstate Carter.

The district court completely rejected Casa Central's defense, finding that Carter informed Alvarez in early April that she wanted to return to work full-time by the time her leave of absence expired. The court found both that Carter had communi-

cated her qualifications to Casa Central and that in fact she was qualified to do the director of nursing job, basing this conclusion on Dr. Levy's first report, Carter's testimony, and the letter to Casa Central from the attorney Carter retained. The court so found despite Alvarez's testimony that he did not see the first report from Dr. Levy, finding instead that Carter read the report to Alvarez at their April meeting. Thus the court rejected Alvarez's testimony and chose to credit that of Carter, substantiated by other witnesses and documents. We discern no error in these findings.

■ Second, the thrust of Casa Central's argument on appeal is that as a result of Dr. Levy's first report, "a reasonable concern as to plaintiff's physical qualifications for the job arose." In this regard the court made a key factual finding which is unchallenged on appeal. It explicitly found that Carter's "position as director of nursing required her to perform substantial supervising and administrative duties which could be performed *without the need to walk or stand for prolonged periods of time.*" (Emphasis added.) Dr. Levy's original report concluded that Carter could perform the duties of the director of nursing position, with the single exception that her ataxia of gait *"may* limit her ability to walk or be on her feet for prolonged periods of time." (Emphasis added.) Hence, the one exception noted by Dr. Levy's report was not a requirement of Carter's job. The report otherwise stated that Carter was fully capable of performing the duties of the director of nursing. Moreover, Dr. Levy, a person whom we may presume knows something about patient care, stated in his report that "I have found no indication of any condition which might represent a possible hazard to the health of patients or other employees in the institution." Nonetheless, Casa Central asserts that it is not required to "readmit persons ... who pose a significant risk of harm to themselves or others." While its assertion is a correct statement of the law, it is simply not substantiated by the evidence. The

tion, however, he admitted that it was possible

to sit down frequently while making rounds.

record is bereft of any evidence that Carter's handicap posed *any* risk of harm to anyone, much less a significant risk. It is precisely this type of uninformed generalization based upon stereotypes and prejudices which the Rehabilitation Act is designed to counteract.

As we have already said, Casa Central has not challenged on appeal the finding that the director of nursing was not required to stand or walk for prolonged periods. There is no suggestion that it is clearly erroneous. In fact, the testimony at trial and Casa Central's own description of the duties of the director of nursing indicate that it is absolutely correct. Given the district court's finding that the *only* limitation imposed by Carter's doctor was not a requirement of her job, we cannot agree with Casa Central's primary contention that the first report created a reasonable concern about her ability to do the job.

Third, the district court expressly found "plaintiff has established that she was excluded from her employment on account of her handicap *even if the defendant did not see Dr. Levy's letter of May 8, 1984.*" (Emphasis added.) The court thus completely rejected Casa Central's contention that its reason for not reinstating Carter was the lack of a "full medical release."[7] While the court's finding might have been more explicit, this case involved a sensitive question of credibility. The court's finding is consistent with the determination that Alvarez, though acting in good faith, was mistaken about Carter's capabilities.

Casa Central's characterization of its motive for refusing to reinstate Carter is belied by the evidence. At trial, Alvarez asserted that the first report was "inadequate," yet failed to articulate any reason why this was so, other than the fact that it was not "unqualified." As we have already said, however, the only qualification on the form was one that was not a requirement of Carter's position. Although Alvarez also testified that the second of the two reports would have led to Carter's reinstatement, he was unable to point to any substantive differences between the two reports, indeed, we believe there are none. The letter does not appear to be any more or less "unequivocal" than the report. Both state that Carter's unsteadiness on her feet was improving. In fact, the report specifically refers to the duties of the director of nursing job, while the letter merely states that Carter is "able to work," without reference to a particular job.

■ We do not hold that an employer may not take measures to be sure of an employee's ability to return to work under these circumstances. A handicapped per-

---

7. The cases cited by Casa Central as holding that requiring a medical release from an employee suffering from a serious condition is a reasonable prerequisite to reinstatement are inapposite. *Walker v. Attorney General of the United States,* 572 F.Supp. 100 (D.D.C.1983), involved an incorrect diagnosis of a serious cardiac condition which restricted the plaintiff to nonstressful desk work. The court held that where the only facts available showed that the plaintiff was not "otherwise qualified," the employer did not violate the Rehabilitation Act by firing him even though, as it turned out, he was "otherwise qualified." *Walker* is factually and legally distinguishable from this case because Carter had demonstrated to Casa Central that she was otherwise qualified for the director of nursing position. Similarly, in *George v. Westinghouse Electric Corp.,* 27 F.E.P. Cas. 1759 (D.Md.1981) (BNA) [available on WESTLAW, 1981 WL 293], a race discrimination case arising under Title VII, the reasonableness of a medical release requirement was not at issue. There the court found that the employer's motive for refusing to reinstate the plaintiff was not his race, but its concern for him, his co-workers, and the work environment, caused by the plaintiff's failure to obtain treatment for his psychiatric problems. *McVey v. Stauffer Chemical Co.,* 19 F.E.P. Cas. 1292 (S.D.Tex.1978) (BNA) [available on WESTLAW, 1978 WL 70], another Title VII case, dealt with one plaintiff's discharge for insubordination. The court found that her refusal to comply with an established company policy requiring that employees involved in accidents obtain a doctor's statement, rather than her race or sex, was the reason for her discharge.

In *George* and *McVey,* the reasonableness of a medical release requirement was not at issue. The courts in those cases found that failure to provide medical statements, rather than race or sex, was the reason for plaintiffs' terminations. Here the court found Carter's multiple sclerosis, not her failure to provide a medical release, was the reason she was not reinstated. In any event, we do not hold that such a request is *per se* unreasonable. Rather, we affirm based upon the district court's finding that Carter's failure to comply with Casa Central's request was simply not the reason that she was not reinstated.

son may be required to meet a job's necessary and legitimate physical requirements. *Davis*, 442 U.S. at 406–07, 99 S.Ct. at 2367. Here, the district court found, the April report communicated Carter's abilities to Casa Central. Casa Central was not permitted to require further assurances that Carter could perform duties which were neither relevant to the director of nursing position nor to the health and safety of Casa Central's patients or other employees. Casa Central has suggested no other reason why further assurances were required. We are not presented with the question of whether Casa Central could have required Carter to undergo a medical examination or required additional information from Dr. Levy.

Consequently, we do not suggest that an employer must unquestioningly accept the employee's doctor's view. An employer presumably understands the physical demands of the workplace and the duties and responsibilities of specific jobs. We fully recognize that employers also have responsibilities to other employees and third parties. An employer's concerns about the abilities of a handicapped employee, however, must be based on more than "reflexive reactions" about a handicapped individual's ability to do the job, no matter how well-intentioned.[8]

■ Casa Central's second challenge to the district court's ruling is that the court's finding that Casa Central never received the May letter is not consistent with the finding that Carter was denied her job solely due to her handicap. No inconsistency in these findings exists. That Casa Central wanted but did not receive additional reassurances is irrelevant because, as the district court found, Carter had established in early April that she was "otherwise qualified" and had communicated her qualifications to Casa Central. She did not need to provide additional information even though she did obtain it.

8.  As the Tenth Circuit aptly noted in *Pushkin*: Discrimination on the basis of handicap usually results from causative elements [more invidious than a hostile purpose or intent to discriminate] and often occurs under the

Finally, Casa Central asks us to decide whether the Rehabilitation Act requires an employer to keep a position open for eighteen months for an employee on a medical leave of absence. The district court's order does not impose such a requirement. Casa Central apparently misreads factual finding number 18, which does nothing more than explain that though Casa Central did, in the course of this litigation, receive a copy of the May letter, it took no action to reinstate her because the position had been filled in the interim. We believe the district court was merely explaining why, once Casa Central finally received the document it needed, Carter was not reinstated. Although this finding may have little connection to the ultimate finding of liability, it is still consistent with the court's finding that Alvarez sincerely believed Carter was unable to perform full-time duties as director of nursing but that he was simply mistaken in that belief.

The judgment of the district court is AFFIRMED.

guise of extending a helping hand or a mistaken, restrictive belief as to the limitations of handicapped persons. 658 F.2d at 1385.