**Karin A. DAVIS, Plaintiff,**

v.

**Anthony FRANK, Postmaster General
of the United States, Defendant.**

No. 88 C 1248.

United States District Court,
N.D. Illinois, E.D.

April 20, 1989.

Diana C. White, Kenneth T. Lopatka, Jenner & Block, Chicago, Ill., for plaintiff.

Ann L. Wallace, Arthur E. Smith, Jr., Asst. U.S. Attys., Chicago, Ill., for defendant.

## MEMORANDUM DECISION AND ORDER

ALESIA, District Judge.

This handicap discrimination case is before the Court for a decision on the merits following a bench trial. After hearing testimony and examining the credible evidence of record, the Court enters judgment in favor of the plaintiff, Karin A. Davis ("Davis"), and against the defendant, Anthony Frank ("Frank"), Postmaster General of the United States. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court sets forth its findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Davis is a thirty-two year old employee of the United States Postal Service ("the Postal Service"), who has been completely deaf since birth. No mechanical device or medical treatment currently available would enable her to hear. Since 1975, Davis has worked in various clerical positions at the Oak Brook Post Office. Davis is a graduate of Hinsdale High School.

2. Frank is the Postmaster General of the Postal Service and, in that capacity, is statutorily responsible for the general administration of the Postal Service. Local postmasters are responsible for the day-to-day administration of the various post offices throughout the United States.

3. This case arises from the Postal Service's denial of two of Davis' applications for the time and attendance clerk position in the Oak Brook Post Office.

4. Davis filed formal complaints with the Postal Service Equal Employment Office ("the Postal Service EEO") on December 17, 1986 (as a result of the July 14, 1986 denial of Davis' first application for the time and attendance clerk position at the Oak Brook Post Office) and on March 24, 1987 (as a result of the December 30, 1986 denial of Davis' second application for the same position at the same post office).

5. On August 13, 1987, the Postal Service EEO issued a Notice of Proposed Disposition finding no handicap discrimination.

6. On September 2, 1987, within 15 days of her receipt of the Notice of Proposed Disposition, Davis gave notice of her intent to appeal the Proposed Disposition to an Administrative Law Judge appointed by the Equal Employment Opportunity Commission ("EEOC").

7. On February 11, 1988, after more than 180 days had elapsed from the filing of her formal complaints with no agency decision, Davis brought this action pursuant to the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 et seq.

8. On February 29, 1988, the Postal Service EEO terminated its processing of the complaints because of the pending litigation.

9. Davis has worked at the Oak Brook Post Office for more than thirteen years. Her duties as a distribution clerk consist of collecting trays of mail and sorting them by route.

10. Davis received training in postage due procedures in 1979 and received training in bulk mail procedures in 1983, and she assists in those departments on a part-time basis.

11. Davis is able to communicate with her fellow employees and with the bulk mail customers at the Oak Brook Post Office by using a mixture of lip-reading, speech, gestures, and written notes. Gloria de Francesco ("de Francesco"), a Postal Service window technician at the Oak

Brook Post Office, testified that Davis is able to sufficiently lip-read if the hearing person whose lips Davis is attempting to lip-read properly forms the words with his or her lips and if Davis is familiar with that person. De Francesco and Davis conducted a demonstration of Davis' ability to communicate in this fashion in open court.

12. In the spring of 1986, Davis trained for a very brief period of time for a portion of the position of time and attendance clerk in the general office of the Oak Brook Post Office.

13. During the course of this training, Gloria Meyer ("Meyer"), the former supervisor at the Oak Brook Post Office who is now a Commercial Program Specialist in marketing, advised Davis that her work was good, though Davis committed some errors in her work. According to Meyer, it was not unusual for a trainee to commit errors. Meyer further testified that Davis' deafness would make it easier for her to work on the time cards because her concentration is better than that of hearing employees. Meyer is the spouse of the former Postmaster of the Oak Brook Post Office.

14. On July 3, 1986, the position of time and attendance clerk at the Oak Brook Post Office was posted for bid under the Postal Service's collective bargaining agreement with the American Postal Workers Union. The collective bargaining agreement provided that the position was to be awarded to the "senior qualified bidder."

15. Davis bid on the time and attendance clerk position and was the senior bidder for the position.

16. On July 14, 1986, the Oak Brook Post Office denied Davis' bid and awarded the position to Evelyn Belgrave ("Belgrave"), a hearing employee with the next highest seniority to Davis.

17. On December 19, 1986, the time and attendance clerk position was again posted for bid at the Oak Brook Post Office. Davis was again the senior bidder for the job.

18. On December 30, 1986, the Postmaster of the Oak Brook Post Office denied Davis' bid and awarded the time and attendance position to Judith Lukas ("Lukas"), a hearing employee with the next highest seniority to Davis. Lukas testified as a witness for plaintiff. Lukas stated that, in her opinion, Davis could perform all of the duties of a time and attendance clerk with the exception of answering the telephone.

19. Gerald Kubick ("Kubick"), Superintendent of Postal Operations at the Oak Brook Post Office, also testified that Davis could probably perform the duties of time and attendance clerk with the exception of answering the telephone, although it might create some difficulty for him.

20. The Postal Service's Standard Position Description for the time and attendance clerk position describes the "basic functions" of the position as follows:

Ascertains the number of hours worked and absent by each of a group of employees, distributes these hours among the significant categories of time and leave to which they are chargeable, and totals these data for reporting purposes; [is] responsible for providing information to employees on rules, regulations and policies concerning leave and pay matters; maintains assignment cards; makes studies relating to time and attendance.

21. The Postal Service's Qualification Standards for Bargaining Unit Positions describe the educational background, experience, and proficiency requirements for a wide variety of clerical positions throughout the Postal Service, including the time and attendance clerk position. These standards also contain a requirement that all applicants have the "ability to hear the conversational voice, hearing aid permitted."

22. When the Oak Brook Post Office posted the time and attendance clerk vacancies for which Davis applied, it included for the first time in its retyped version of the Postal Service's Standard Position Description the phrase "answers telephone" as the last of a list of miscellaneous duties and as a "basic function." Earlier postings of the time and attendance clerk's job at the Oak Brook Post Office contained no such re-

quirement. This insertion was ordered by the Postmaster of the Oak Brook Post Office and was not negotiated with the local American Postal Workers Union representative.

23. Although the Oak Brook Post Office claims that answering the telephone in its general office is a necessary task of the time and attendance clerk and that Davis cannot perform this task, this task can be performed by almost any single Oak Brook Post Office employee or by any group of employees, using the present telephone equipment in that post office.

24. The fact that the Oak Brook Post Office has inserted the phrase "answers telephone" in only its two most recent postings of the time and attendance clerk position precludes Davis (the first deaf employee to train in the general office) from obtaining the time and attendance clerk position.

25. In addition to answering the telephone, the duties of the time and attendance clerk, as described in both the Postal Service Standard Position Description and the descriptions posted by the Oak Brook Post Office, consist of completing paperwork (tallying time cards, assigning hours to proper work or leave categories, preparing reports) and communicating with employees on time and attendance issues.

26. At the Oak Brook Post Office, completing the required paperwork is so time-consuming that if the time and attendance clerk is also required to answer the telephone, the time and attendance clerk must, on occasion, transfer her regular work to other clerks who work in the general office and several distribution clerks who assist in the general office as back-up personnel.

27. With the same training that all new time and attendance clerks receive, Davis can perform all of the paperwork associated with the time and attendance clerk position.

28. Based on her past performance and the requirements of the time and attendance clerk position, Davis can also perform the communication that the time and attendance clerk position requires as follows:

(a) Davis can already communicate with her fellow employees at the Oak Brook Post Office by reading their lips and then speaking, gesturing, or writing notes to respond. Most of the employees at the Oak Brook Post Office experience no difficulty in communicating with Davis after an initial period of becoming acquainted with her. A few employees, including the Postmaster, speak to her only by writing notes or by having others speak to her on their behalf;

(b) Davis' ability to communicate in the time and attendance clerk position is made easier because (1) the subjects discussed are simple, repetitive and routine, and are reflected in written procedures and pre-printed forms, and (2) the persons who communicate most often with the time and attendance clerk are the supervisors of the hourly employees (who are or can become used to communicating with Davis), rather than the hourly employees themselves;

(c) Expansion of the existing TTY keyboard telephone system will enable Davis to communicate even more efficiently and quickly with fellow employees. The TTY keyboard systems utilizes a monitor on which words will appear by punching a keyboard. This system has been successfully used by deaf persons in the workplace and, in this case, can be expanded at a minimal cost.

29. Both Davis and the Postal Service presented expert testimony regarding Davis' ability to communicate within the workplace. Davis' expert witnesses were Lucius Swilley ("Swilley"), a former executive with Illinois Bell Telephone Company, and Marymargaret Sharp–Pucci ("Sharp–Pucci"), a professor at Northern Illinois University and a Project Coordinator for the Institute on Deafness who is herself deaf. Both of these experts testified that the Postal Service could make minimal and inexpensive accommodations to enable Davis to perform the communication required by the time and attendance clerk position.

30. The Postal Service presented the expert testimony of Dr. Rodney Fralicx ("Fralicx"), an industrial psychologist who is vice-president of Standard & Associates, an industrial psychology firm. His testimony consisted primarily of speculation and conjecture.

31. Davis cannot perform the telephone answering duties which are currently performed by four of the clerical employees, including the time and attendance clerk on occasion.

32. At no time before Davis was denied the time and attendance clerk position on July 14, 1986 did anyone acting on behalf of the Oak Brook Post Office discuss the job requirements with her or discuss ways in which she might be able to perform the duties of the time and attendance clerk.

33. Following the July 14, 1986 denial of Davis' bid for the time and attendance clerk position, Mary Clemons ("Clemons"), the Postmaster of the Oak Brook Post Office, advised Davis that she had been turned down because she did not meet the Postal Service Qualification Standards applicable to clerical positions (which require that the applicants be able to "hear the conversational voice, hearing aid permitted") and, therefore, could not perform the time and attendance clerk functions of answering the telephone in the general office or communicating with other Postal Service employees.

34. At some later time, Clemons claimed that Davis made "costly mistakes" when she worked in the time and attendance office in the spring of 1986, and Clemons also claimed that Davis could not be trained to perform even the time card tallying accurately. Yet, Clemons never told Davis that she made "costly mistakes" and Clemons did not explain her decision to deny the time and attendance job to Davis on that basis.

35. Even Fralicx, the Postal Service's expert witness, conceded that he did not feel that any mistakes made by Davis during her training period were important because any employee in training, whether hearing-impaired or not, would be expected to make mistakes.

36. Clemons had no discussions with Davis before or after turning her down a second time for the time and attendance clerk position either about Davis' ability to perform the job or about Clemons' reasons for rejecting her bid.

37. Although Davis offered to assume responsibility for additional paperwork in return for not answering the telephone in the general office, Clemons refused her offer.

38. The Oak Brook Post Office has never suggested any alternative procedure which would allow Davis to perform the time and attendance clerk's job.

39. Linda Turney ("Turney"), a bulk mail acceptance clerk for the Postal Service at the Schaumburg Post Office, testified for Davis. Turney does not know Davis. Turney stated that the time and attendance clerk at the Schaumburg Post Office has no telephone answering duties and that all telephone calls from the general public are answered by a receptionist clerk. Turney further testified that there are between 400 and 500 Postal Service employees, including 130 to 135 clerical employees, at the Schaumburg Post Office. Ten percent of the clerks at that facility have some type of hearing impairment or are deaf. Turney cited several examples of hearing-impaired persons who have successfully worked within the Postal Service:

(a) Susan Taighe, Patricia Hagerich, and Melinda Stickley are all currently employed in various post offices throughout the country as window clerks. Window clerks deal with the general public on a daily basis;

(b) Daniel Lievins was employed as a supervisor at the North Suburban Postal Facility in suburban Chicago. Supervisors must communicate with fellow employees on a daily basis; and

(c) William Osmond is currently employed as a letter carrier for the Postal Service. Letter carriers also deal with the general public on a daily basis.

40. According to Turney's testimony, deaf or hearing-impaired Postal Service employees can successfully work with other Postal Service employees in various job positions and serve the general public with minimal accommodation if the Postmaster in the particular postal facility is not insensitive, indifferent or hostile to needs of the deaf, or does not create artificial barriers to the employment, retention, lateral transfer, or promotion of the deaf.

41. In this case, Clemons intentionally and artificially modified the Postal Service Standard Position Description to prevent Davis, as senior bidder, from obtaining the position of time and attendance clerk.

42. Based on Clemons' testimony and the other evidence of record, Clemons expressed and permitted an insensitive, inflexible, indifferent, and somewhat hostile and antagonistic attitude in the workplace toward Davis based on her handicap.

43. Davis' deafness poses no health or safety risks to others within the postal workplace.

44. During the course of this trial, this Court has had the unique opportunity to observe the demeanor of the witnesses while testifying to the events giving rise to this dispute. Based on our observations, we make the following credibility determinations:

(a) Karin Davis' testimony on all disputed issues of fact was knowledgeable, forthright, and very credible. In addition, the demonstration of her communication skills in open court with de Francesco was very credible.

(b) Judith Lukas' testimony on all disputed issues of fact was knowledgeable, precise, unbiased, candid, and very credible;

(c) Mary Clemons' testimony on all disputed issues of fact was biased, evasive, inconsistent, and not credible;

(d) Gloria de Francesco's testimony on all disputed issues of fact was knowledgeable, concise, forthright, and very credible. As noted already, the demonstration in open court with Davis was very credible;

(e) Lucius Swilley's testimony on all disputed issues of fact was knowledgeable, precise, forthright, and very credible;

(f) Marymargaret Sharp–Pucci's testimony on all disputed issues of fact was very knowledgeable, detailed, precise, and very credible;

(g) Dr. Rodney Fralicx's testimony on all disputed issues of fact was very vague, speculative, and conjectural. Overall, his testimony was neither knowledgeable nor credible.

(h) Arlene Anglemier's testimony on all disputed issues of fact was significantly biased and not credible;

(i) Sandra Lawera's testimony on all disputed issues of fact was significantly biased and not credible;

(j) Gloria Meyer's testimony on the majority of all disputed issues of fact was generally biased, but credible to the extent that she conceded that Davis' work during the course of her training in the time and attendance office was good; that Davis committed some errors; that it was not unusual for a trainee to commit errors; and that Davis' deafness would enable her to concentrate more easily on the time cards than other hearing employees could;

(k) Cathy Heinemann's testimony on all disputed issues of fact was not particularly knowledgeable and, to that extent, not credible;

(l) Gerald Kubick's testimony on all disputed issues of fact was knowledgeable, precise, and credible to the extent that he admitted that Davis could perform the duties of the time and attendance clerk position with the exception of answering the telephone;

(m) Ann Kulbeckas' testimony on all disputed issues of fact was credible to the extent that she admitted that she could not think of a single question which might be asked of the time and attendance clerk which could not be written; and

(n) Linda Turney's testimony on all disputed issues of fact was very knowledgeable, precise, detailed, candid, clear, and very credible.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this cause pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b) and (e).

3. This action is brought under Sections 501 and 504 of the Rehabilitation Act of 1973 ("the Act"), as amended, 29 U.S.C. §§ 791 and 794.

4. Section 501 imposes an affirmative duty upon the Postal Service "to structure [its] procedures and programs so as to ensure that handicapped individuals are afforded equal opportunity in both job assignment and promotion." *See Prewitt v. United States Postal Service*, 662 F.2d 292, 306 (5th Cir.1981) (quoting *Ryan v. Federal Deposit Insurance Corp.*, 565 F.2d 762, 763 (D.C.Cir.1977)). Section 504 imposes a duty upon the Postal Service not to discriminate against an "otherwise qualified handicapped individual." 29 U.S.C. § 794; *see also School Bd. of Nassau County, Florida v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 1126, 94 L.Ed.2d 307 (1987); *Carter v. Casa Central*, 849 F.2d 1048, 1053 (7th Cir.1988).

■ 5. The burdens of proof and persuasion in cases brought under the Rehabilitation Act are generally modeled after those developed under Title VII case law. *See Guinn v. Bolger*, 598 F.Supp. 196, 200 (D.D.C.1984). In order to establish a *prima facie* case, Davis must demonstrate that she belongs to a protected class, that she was qualified for the time and attendance clerk position, and that the Postal Service rejected her for the position under circumstances giving rise to an inference of unlawful discrimination. *See Prewitt*, 662 F.2d at 305 n. 19, 306 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

■ 6. Davis is a "handicapped person" within the meaning of 29 C.F.R. § 1613.702 and, therefore, belongs to a protected class.

7. Davis is also qualified for the time and attendance clerk position. Under 29 C.F.R. § 1613.702(f), a "qualified handicapped person" is defined as one who can perform the "essential functions" of a position with or without reasonable accommodation. *See Arline*, 480 U.S. at 287, 107 S.Ct. at 1131 n. 17; *Carter*, 849 F.2d at 1053.

8. The Postal Service has an affirmative obligation to make reasonable accommodations for Davis to enable her to perform the "essential functions" of the time and attendance clerk position. *See Arline*, 480 U.S. at 289, 107 S.Ct. at 1131 n. 19; *Carter*, 849 F.2d at 1053.

9. The "essential functions" of the time and attendance clerk position are those listed in the Postal Service's Standard Position Description. *See Guinn*, 598 F.Supp. at 201–202. The Standard Position Description lists a number of duties involving paperwork and communication on time and attendance issues. The duties described require the exchange of information, not the ability to hear the conversational voice with or without a hearing aid.

■ 10. Pursuant to the dictates of 29 C.F.R. § 1613.705, the Postal Service may not use any selection criterion that "screens out or tends to screen out" qualified handicapped individuals unless the criterion is shown to be "job-related for the position in question." *See* 29 C.F.R. § 1613.705; *Bentivegna v. United States Dept. of Labor*, 694 F.2d 619, 622 (9th Cir.1982); *Prewitt*, 662 F.2d at 306–07. Thus, to the extent that the Postal Service's Qualification Standards for Bargaining Unit Positions establish an absolute, across-the-board requirement that the time and attendance clerk be able "to hear the conversational voice, hearing aid permitted," these standards are overbroad and discriminatory because the ability to hear the conversational voice is not "job related," that is, "required by business necessity." *See Prewitt*, 662 F.2d at 306–07. *Cf. Southeastern Community College v.*

*Davis*, 442 U.S. 397, 407, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979) (where the Court held that a student nurse's or Registered Nurse's ability to understand speech without reliance on lip-reading was necessary for patient safety). A handicapped person may only be required to satisfy a job's "necessary and legitimate physical requirements." *See Carter*, 849 F.2d at 1055–56.

11. According to the applicable standard position description, the time and attendance clerk is basically responsible for tallying, documenting, and analyzing the hours that Postal Service employees work or are absent, and for implementing the Postal Service's policies for hourly employees. The Court specifically holds that these duties are the "essential functions" of a time and attendance clerk.

■ 12. The Oak Brook Post Office's practice of using the time and attendance clerk, together with three other clerical employees, to answer all the telephone calls that are received in its general office, does not transform answering the telephone into an "essential function" of the time and attendance job.

13. Davis can perform the "essential functions" of the time and attendance clerk position with no accommodation at all for the paperwork required, and with the following minimal and inexpensive accommodations for the communication required:

(a) laminated cards containing phrases Davis would need to use frequently;

(b) prepared lists of terms and questions frequently encountered by the time and attendance clerk, to allow people to point to the topic they want to discuss and thereby make lip-reading easier;

(c) elementary training that can be done at no cost to the Postal Service to make hearing employees aware of common mistakes in communicating with deaf employees;

(d) training in basic signs and finger spelling for those few hearing employees who might come into contact with Davis on a frequent basis. This training can be done in about one hour; and

(e) expanding the use of a TTY keyboard for the hearing impaired as a means of making written communication faster. The TTY keyboard can be purchased at minimal cost. There is a TTY keyboard already installed at the Oak Brook Post Office.

14. These accommodations are considerably simpler and less expensive than the accommodations suggested in the regulations which define "reasonable accommodation." Those suggestions include job restructuring, hiring interpreters or readers, and purchasing equipment or devices. *See* 29 C.F.R. § 1613.704(b).

15. These accommodations will not require a "fundamental alteration" or a "substantial adjustment" in the Oak Brook Post Office's operations. *Cf. Davis*, 442 U.S. at 410, 99 S.Ct. at 2369.

16. Davis has carried her burden of establishing a *prima facie* case of handicap discrimination. *See Prewitt*, 662 F.2d at 306–07.

17. Once Davis has made a *prima facie* showing, the burden of persuasion shifts to the Postal Service to challenge Davis' showing or to demonstrate that the Postal Service had a "legitimate, non-discriminatory reason" for denying Davis the time and attendance clerk position. *See Guinn*, 598 F.Supp. at 202. Typically, an employer attempts to overcome this burden by showing that the challenged criterion is "required by business necessity" or that providing the necessary accommodations would create "undue hardship." *See Prewitt*, 662 F.2d at 306.

■ 18. In this case, the Postal Service has not shown that the ability to hear the conversational voice is a "business necessity" for the time and attendance clerk position. At best, the Postal Service has produced some testimony that some of its hearing employees might be inconvenienced because they would be required to communicate with a person who cannot hear. "Mere expediency" or lack of it, however, should not be confused with "business necessity." *See Bentivegna*, 694 F.2d at 621–22.

■ 19. Nor has the Postal Service demonstrated that providing the accommo-

dations described above will impose "undue hardship" upon the agency. The Postal Service has adduced no evidence that it would be economically burdened by providing these accommodations. Instead, the Postal Service has argued that permitting the time and attendance clerk position to be filled by Davis, who cannot answer the telephone, will undermine morale among those hearing employees who are now required to answer the telephone on a rotating basis. Yet, as noted, answering the telephone is not an "essential function" of the time and attendance clerk position. *See Guinn*, 598 F.Supp. at 201–02. In any event, the possibility of lowered morale does not rise to the level of "undue hardship."

20. The Postmaster and the supervisory personnel of the Oak Brook Post Office have engaged in intentional discrimination against Davis by revising the job description of the time and attendance clerk to artificially and intentionally exclude Davis, as the senior bidder, from obtaining the position. The elimination of this type of entrenched resistance to employment of the handicapped, which often results from "archaic attitudes" and "remote concerns," is one of the remedial purposes of this litigation. *See Arline*, 480 U.S. at 280, 107 S.Ct. at 1127; *Mantolete v. Bolger*, 767 F.2d 1416, 1422 (9th Cir.1985).

21. Davis has satisfied her ultimate burden of proving that the Postal Service has violated its duty under Section 501 of the Act to structure its procedures and programs at the Oak Brook Post Office so as to ensure that Davis is afforded equal opportunities in job assignment and promotion, as well as its duty under Section 504 of the Act not to discriminate against an "otherwise qualified handicapped individual." *See Prewitt*, 662 F.2d at 306.

22. Davis has demonstrated that she was denied the time and attendance clerk position "solely by reason of" her deafness. *See Carter*, 849 F.2d at 1053.

## DECISION

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, this Court enters judgment in favor of the plaintiff, Karin Davis, and against the defendant, Anthony Frank, Postmaster General of the United States, and orders the defendant as follows:

(a) to immediately appoint Davis to the time and attendance clerk position as if she had been awarded the position on July 14, 1986;

(b) to immediately make the accommodations described in this opinion within the workplace;

(c) to immediately pay to Davis the seniority pay increases and any other benefits she would have received if she had been awarded the time and attendance clerk position on July 14, 1986; and

(d) to reimburse Davis for reasonable attorneys' fees and costs incurred in this case. Davis' attorneys are ordered to file a verified, itemized petition for attorneys' fees and costs on or before May 19, 1989.

IT IS SO ORDERED.